Certiorari; from Court of Appeals. 33 *Ga. App.* 362.

*J. V. Poole,* for plaintiff.

*Dorsey, Brewster, Howell & Heyman* and *Mark Bolding,* for defendant.

---

## SLADE, administrator, *et al. v.* RAINES.

Where a grantor conveyed land to a grantee to secure a debt, and at the same time by separate deed conveyed the same land to another for life, reserving to the grantor a life-estate, with remainder (after the death of the grantee in this second deed) to the grantee in the security deed, such life-estate and such remainder-estate were subject to the security deed; and it will be presumed that the intention of the grantee in the security deed was that the estate thereby conveyed was not to merge in the remainder estate and thus postpone the lien of the security deed to the life-estates created by the other deed.

No. 4805. FEBRUARY 19, 1926.

Injunction. Before Judge Crum. Crisp superior court. February 7, 1925.

*Pearson Ellis* and *A. S. Bussey,* for plaintiffs in error.

*Whipple & McKenzie,* contra.

HINES, J. Mary Raines, her daughter, Leila Slade, and her son William M. Raines owned a tract of land as tenants in common. Three deeds conveying said land were simultaneously executed on November 9, 1918. (1) The daughter and son, in consideration of $14,000, conveyed it by deed of warranty to their mother, thus putting the whole estate therein in her. (2) The mother conveyed it to her daughter to secure the payment of $7000 due to the daughter on the purchase-price of the daughter's interest. This deed contained a power of sale, authorizing the grantee, her heirs, executors, administrators, or assigns, to sell the land if the mother defaulted in the payment of the debt thereby secured. (3) The mother, in consideration of $1 and of natural love and affection, conveyed the land to her son for and during his natural life (reserving to herself a life-estate therein), with remainder, after the death of the son, to the daughter. The mother failed to pay the debt secured by her deed to her daughter. Both the mother and the daughter died. Thereafter, J. O. Slade, the husband of the

Mortgages 27 Cyc. p. 1379, n. 9.

daughter, as her administrator, under the power of sale in the security deed, advertised and sold the land; and at the sale he became the purchaser. The present proceeding was brought by the son to enjoin J. O. Slade from interfering with his possession, and for other equitable relief. The trial judge held that the security deed from the mother to the daughter attached only to the life-estate of the mother, reserved under her deed to the son, that the same could not lawfully operate as against the life-estate of the son, and that the same became inoperative at the death of the mother; and thereupon granted an injunction. To this judgment J. O. Slade as administrator, and individually, excepted.

The court erred in holding that the security deed from the mother to the son attached only to her life-estate reserved in her deed to her son, and in not holding that said security deed attached to the whole estate therein. *Knowles* v. *Lawton,* 18 *Ga.* 476 (63 Am. D. 290). As the injunction was granted upon a wrong construction of the instruments involved, the judgment must be reversed. *Hill* v. *Wadley So. Ry. Co.,* 128 *Ga.* 705 (57 S. E. 795).

*Judgment reversed. All the Justices concur, except*

RUSSELL, C. J., dissenting. It is conceded, where two or more instruments concerning the same parties and relating to a common subject-matter are executed as a part of a single transaction and contemporaneously, that all rights concerning this single subject-matter and between these same parties are to be treated and construed as a single instrument. No proper construction can be reached otherwise; for in such circumstances all the parties are presumed to have a common interest in a reasonable ending touching the subject-matter in which all are interested. As heirs of a deceased husband and father, Mrs. Elizabeth Raines, widow, W. M. Raines, and Mrs. J. O. Slade, son and daughter of James Raines, deceased, after fully administering upon his estate, were tenants in common in a certain tract of land. The record shows that the value of the land was estimated at $21,000 in the period of high prices in the year 1920. The widow was an old woman unable to labor; the son, a middle-aged man, as appears from the evidence, was also incapable physically to perform the hard manual labor required upon the farm. He had neither wife nor child to inherit his share of the land. The daughter had married a man who owned a tract of

land adjoining that in which his wife had a one-third interest, and who was a man of ability in the conduct of his business. This daughter had several children, the grandchildren of the deceased original owner of the premises, and of the aged widow, which children were nieces and nephews of the son, who was quite unlikely to marry or have heirs. The parties just referred to, with or without previous understanding, went to the office of a lawyer and executed the following named papers: The first to be recorded was a deed from the widow, Mrs. Raines, reserving for herself a life-interest, and then conveying a life-estate in the entire tract of land at her death to her son, W. M. Raines, with remainder in fee to her daughter, Mrs. Slade, and her children. In the same room and at the same time a deed was executed by which Mrs. Slade and W. M. Raines each conveyed to their mother, Mrs. Raines, their one-third undivided interest in the tract of land; and a security deed was executed by Mrs. Raines to her daughter, Mrs. Slade, to secure the sum of $7000. However, it appears that no money was passed, and none was paid by Mrs. Slade to her mother; no note evidencing the debt was executed, and so far as appears from the record nothing appears to have been said at that time of any outstanding indebtedness due by Mrs. Raines to her daughter, Mrs. Slade.

Construing these three instruments as but part of a single contract, and clarifying any apparent ambiguities by the circumstances attending the execution of this three-headed paper, what was the intention of the parties? The cardinal, ever-essential rule which is paramount in the construction of writings making disposition of real property is to ascertain and give effect to the intentions of the parties who made or participated in making them; and there is another rule which has received the sanction of our laws in every court, that when there are two or more parties to a contract, and one of them knows the sense in which another is making a contract and that the view of the latter as to his rights is contrary to his own, the former will be bound by the construction which he knows is placed upon it by this holder of an adverse interest. Taking this view of the case, we think the trial judge correctly decided that when this family gathering was had in the office of the attorney, it was not an assemblage for the making of any stipulations or engagements between any two of the parties

apart from the other, but that it was the intention of all parties, as mother, brother and sister, as heirs in common, to make such equitable disposition of the land as would best subserve the special needs of each member of this common family without injury to any or either of them, and then make sure that the only proper descendants of James Raines, deceased husband and father of the tenants in common, would receive this common heritage unimpaired and unencumbered. To accomplish this purpose and in order to insure the old mother a competence for the remainder of her life, it was agreed to give her the use of the land for life. In view of the fact that the son owned an undivided one-third interest in fee, and yet apparently was recognized as being of weak mind as well as body, a man unmarried and not intending to marry, he was to be given, and consented to accept, the use of the entire tract with its consequent rents, issues, and profits for his life in exchange for his undivided one-third interest in fee; and in return for this, all the interest of the mother and son at the death of the son was to go to the daughter, or to her children if she should die. The interest of each being estimated at the sum of $7000, and it being clear that Mrs. Slade, who was present, very well knew the intention with which her mother and brother surrendered their title in fee simple for a mere life-estate, it is highly probable, if indeed not certain, that the security deed was executed merely as a protection or guarantee that outside creditors of an old woman like her mother, or her weak-minded brother, should not embarrass or encumber either the one-third interest which she was conveying in fee or the remainder of the property which under the arrangement would finally devolve upon her.

The consideration of a deed is always legitimate subject-matter of inquiry, and the trial judge was amply authorized in the present case to find that this security deed was without consideration. The only evidence introduced as to that point was to the effect that J. O. Slade, the husband of Mrs. Slade, had made advances, the nature, character, and amount of which is not disclosed, to his mother-in-law, and therefore this debt, if debt it be, was due not to the daughter but to J. O. Slade, and falls within the rule that transactions between husband and wife are to be closely scanned, enveloped as they are in law in clouds of suspicion which demand proof as to the bona fides of the transaction. It may be

said that the contracts, treated as contemporaneous, must be construed as one, and thus construed would evidence an intention on the part of the widow and brother to buy land, and that the security deed was given for the purpose of securing Mrs. Slade in the purchase of her one-third interest. Treating Mrs. Raines and her son as people of ordinary intelligence, all the circumstances repel such a conclusion. In the first place, due to age and debility neither was in such position as to desire to purchase land for the purpose of speculation or profit. The evidence shows that they lived together, that their two-thirds interest was ample to supply their needs, and that they could supplement this by a sale of part of their interest in the land which was unencumbered. But if we concede that it was the purpose of Mrs. Raines to buy her daughter's interest, the contract as made would be one so unconscionable as to be unenforceable in any court of equity,—a contract which no honest man would make or take advantage of. A life-estate in a tract of land encumbered by a deed to secure a debt of $7000, in exchange for property worth $7000. And as to W. M. Raines, it would be to assume that he was willing to exchange his share in the estate, likewise worth $7000, for the use of the two-thirds remaining interest only for the period elapsing during the death of his mother and his own death, and that use subject to a burden of $7000, which he knew he could not remove, and which was liable at any time to turn him a vagrant upon the public roads. The condition and circumstances of the parties, and the presumption that Mrs. Slade or her agent, J. O. Slade, knew how the contract was understood by the mother and son, binds them, under the provisions of section 4267 of the Civil Code, to give W. M. Raines what he and his mother without any doubt thought they were receiving — a home upon these lands as long as either of them should live.

The sister, Mrs. Slade, has long been dead, and death prevents any expression by her as to the purpose of this trilateral contract; but if her purpose was to assure to her children the ultimate ownership of her father's home place, it will be effectuated by the judgment of the trial judge, whereas it would be defeated by a different decision from that rendered by his honor. The record shows that J. O. Slade, the husband, upon the sale of the land under the security deed as administrator, is now the owner; where-

as under the agreement originally made it was to become the property of the children, and he was altogether omitted. It is certainly among the possibilities that he may devise this land, which was intended by the makers of these papers as a common inheritance so arranged as to meet the special needs of all the heirs, to those who are utter strangers in blood to the deceased daughter, Mrs. J. O. Slade.