## SLADE, administrator, *et al. v.* RAINES.

PER CURIAM. A, B, and C were widow, son, and daughter respectively of E, deceased, and as sole heirs at law were tenants in common of described realty. F was the husband of C. F formed a scheme to get the interest of B, who was of feeble mentality, and on account of the relationship between them was under the influence of F, to whom B was accustomed to look for guidance in business matters. The scheme was carried out as follows: Under direction of F a deed was executed by B and C to A, conveying to the latter their respective interests in the land. At the same time A executed to B a deed which reserved a life-estate to the grantor in the whole property and conveyed a life-estate in the whole property to B, to take effect at the death of A, and a remainder estate in fee in the whole property to C after death of B. On the same day A executed a security deed purporting to secure a note of $7000, the estimated value of one third interest in the entire property, to C. No money was passed between any of the parties at any time. The deed purported to describe a note from A to C for the amount above stated, to mature at a named date. The deed contained

Appeal and Error, 4 C. J. p. 652, n. 55.
Cancellation of Instruments, 9 C. J. p. 1232, n. 86.
Evidence, 22 C. J. p. 308, n. 76.
Executors and Administrators, 24 C. J. p. 874, n. 17.
Mortgages, 41 C. J. p. 443, n. 59.

a power of sale to the grantee, her heirs and assigns, and authorized them to become purchasers at the sale. Within a few months after the date of the deed C died intestate, leaving as her only heirs at law F and named children. A continued in possession of the property. The date expired for maturity of the alleged note, but no move was made to foreclose the security deed. About two years thereafter A died intestate, and no administration was ever sued out upon her estate. Shortly after A died, F obtained letters of administration upon the estate of C, and in the absence of B, who was on a visit in another part of the State, exercised as administrator the power of public sale contained in the deed, and himself became the purchaser. Shortly after the sale B instituted an action against F individually and as administrator upon the estate of C, and the children of C and F, seeking to set aside as fraudulent and void all of the conveyances above mentioned, and for partition between B and the heirs of C as tenants in common, and for injunction to prevent F from cutting the timber. The petition alleged facts substantially as above indicated. A demurrer on general and special grounds and an answer to the petition were filed. At an interlocutory hearing the judge granted a temporary injunction. On writ of error the judgment was reversed. *Slade* v. *Raines*, 161 *Ga.* 859 (132 S. E. 58). After that decision by this court the petition was amended by striking so much of the petition and prayers as sought to have declared void all of the said deeds, and substituting in lieu thereof allegations and prayers that, upon the same grounds of attack as indicated above, "the said security deed" and the sale thereunder be declared void "as to this petitioner," and that his right to a life-estate in all the property be established in accordance with stated representations to him to that effect made by F at the time F was having the deeds prepared. The demurrer was overruled. A verdict for the plaintiff was returned. The defendants moved for a new trial, which was refused. The defendants excepted to both rulings just stated. *Held:*

1. The petition alleged a fraudulent scheme upon the part of F to acquire the interest of B in the land, which included, among other things, fraudulent procurement of the security deed and a sale and purchase by him under the powers therein expressed.

2. B could recognize his deed to his mother, A, and accept the conveyance by her to him of a life-estate as therein provided for him, and at the same time attack as fraudulent the security deed to F and the sale under that deed to himself.

3. The petition was sufficient to set forth a cause of action for setting aside the security deed and the sale thereunder.

4. The court did not err in overruling the demurrer to the petition as twice amended, upon any of the grounds stated. BECK, P. J., and HINES, J., dissent from the foregoing rulings.

5. One ground of the motion for new trial complains of the admission of testimony by the plaintiff [B], that "Mr. Slade [F] wanted to compromise with me, and said he would give me the Bundrick place if I would agree to let him have the home place; and I told him that I could not do that, because that was where I was born and raised, and I wanted to live there," over the objection that it tended to show a

proposition made with a view to a compromise. *Held*, that this evidence was inadmissible for the reason stated. Civil Code (1910), § 5781.

6. Under a proper construction of the pleadings, it was error to charge the jury that "By amendment made by the plaintiff to his petition the case now proceeds in the name of W. M. Raines against J. O. Slade individually."

7. In several grounds of the motion for new trial complaint is made of portions of the charge of the court. None of the grounds contain propositions of such a character as to require special elaboration, and none of them require the grant of a new trial. BECK, P. J., and HINES, J., dissent in so far as this ruling applies to the tenth ground.

8. As the case is remanded for a new trial, no ruling is made as to the sufficiency of the evidence.

*Judgment reversed. All the Justices concur, except as shown in headnote 7, and except Hill, J., absent.*

No. 5695. SEPTEMBER 13, 1927. ON REHEARING, OCTOBER 1, 1927.

Equitable petition. Before Judge Crum. Crisp superior court. October 6, 1926.

*Pearson Ellis* and *A. S. Bussey,* for plaintiffs in error.

*Whipple & McKenzie,* contra.

After rendition of a decision of reversal in this case, a motion for rehearing was filed. Subsequently that judgment was vacated, the opinion therewith was withdrawn, and the foregoing syllabus-opinion and judgment were substituted. Justice Hill was present and participated when the original judgment was rendered, but dissented from it. His opinion follows:

HILL, J. After the former decision in this case (161 *Ga.* 859), the plaintiff offered amendments which were allowed, and the defendants demurred to the petition as amended. This demurrer was overruled, and the defendants excepted pendente lite. After an answer was filed by the defendants denying the material allegations of the petition, the trial resulted in a verdict and decree in favor of the plaintiff. A motion for new trial was overruled, and the defendants excepted. In addition to the facts stated when the case was formerly before this court, in order to understand the issues it is necessary to set out further facts as alleged in the petition and the amendments, as follows: Under the guidance and direction of J. O. Slade, in accordance with a plan that had been previously worked out by himself, without consultation or explanation of the full details and meaning thereof, and at the request of Slade and upon his advice, the plaintiff joined with his sister, Mrs. Leila Slade, who was the wife of J. O.

Slade, in the warranty deed to Mrs. Mary Raines, their mother, conveying both lots of land in controversy, without reservation, on November 9, 1918; the deed setting out a consideration of $14,000, supposed to represent the value of the combined interest of Mrs. Leila Slade and plaintiff. No money or valuable consideration was paid to the plaintiff for this deed. On the same day and under the same circumstances, and under the advice and direction of J. O. Slade, Mrs. Mary Raines executed a deed to all said property, wherein she reserved unto herself a life-estate, providing that after her death the plaintiff should hold and occupy the land during his natural life, and after his death the entire interest in the land should revert to Mrs. Leila Slade, the wife of J. O. Slade, and her heirs, administrators, and assigns, in fee simple; the consideration expressed in this deed is one dollar and natural love and affection. On the date of the execution of the two other deeds, in accordance with the previously worked out plan of J. O. Slade, and without the knowledge of plaintiff or any explanation to him concerning the same or any consent upon his part, J. O. Slade procured Mrs. Mary Raines, mother of plaintiff, to execute and deliver to Mrs. Leila Slade, wife of J. O. Slade and sister of plaintiff, a security deed to the entire interest and title in the land in controversy, purporting to secure Mrs. Slade in the sum of $7,000 as evidenced by a note purporting to have been given by Mrs. Mary Raines on the above-named date for $7,000 and due November 9, 1921, besides interest and attorney's fees; the deed also contained a power of sale in the event of default in payment of the note, giving to Mrs. Leila Slade, her heirs, etc., power to sell the lands, and providing further that she herself, her executors, administrators, or assigns might become the purchaser should any such be the highest bidder. Plaintiff alleges that no money was passed as a result of this transaction, but that the consideration purported to represent the estimated value of the original interest of Mrs. Slade in the lands in controversy. Plaintiff knew nothing of this deed or of the note, or of the arrangement whereby his life-interest was made nugatory, without consideration having passed to him. During the life of plaintiff's mother nothing was ever said or done about the security deed, notwithstanding the note secured matured November 9, 1921, and plaintiff's mother did not die until September 19, 1923.

Mrs. Leila Slade died intestate in 1919; no administration was taken or applied for upon her estate until immediately following the death of Mrs. Mary Raines, when J. O. Slade made application to the court of ordinary of Crisp County, at the October term, 1923, and was granted letters of administration on her estate at the November term, 1923, having qualified and given bond in the sum of $5,000. Immediately following the grant of the letters of administration J. O. Slade, in November, 1923, acting under the power of sale in the security deed, advertised the lands in controversy for sale, and sold them on the first Tuesday in December, 1923; at that sale J. O. Slade was the highest bidder for the sum of $4050, and in accordance with the sale, on December 4, 1923, executed a deed as administrator of Mrs. Leila Slade to himself individually, conveying the entire interest in and to the lands, without any reservation whatever, and had the deed duly recorded. The advertisement, sale, and execution of the deed were without the knowledge of the plaintiff, he being at the time in North Georgia, visiting relatives. Slade is insisting that plaintiff has no further interest in the land, "and is calling on him for said property."

Plaintiff alleges that the security deed and all the proceedings thereunder, including the sale of the lands to J. O. Slade, are null and void, and that both the deeds should be canceled of record, for the following reasons: (1) In making the original deeds heretofore recited, first to his mother, and second from his mother to him, with a reservation as stated, plaintiff relied entirely on the advice and suggestions and direction of J. O. Slade, he being his brother-in-law, and an active and successful farmer and neighbor. (2) Under these first two deeds the entire interest of plaintiff in the lands in controversy passed out of him without any money consideration, except the life-estate that was carved out to him, to begin after the death of his mother, which occurred in September, 1923. (3) Plaintiff had no knowledge whatever of the security deed from Mrs. Mary Raines to his sister, Mrs. Leila Slade, the effect of which was to absolutely deprive plaintiff, without consideration, of not only the life-estate purporting to have been given to him, but also of every other interest that he had in the land as an heir at law of his deceased father. Plaintiff alleged these and other acts of Slade as a fraud upon

him. Several years prior to 1918 the plaintiff suffered a severe
spell of typhoid fever, from which he has never fully recovered;
since that time he has been less able to understand business mat-
ters, or the purport of legal documents, or how to conduct busi-
ness matters generally, and was therefore more inclined to rely
upon the counsel, suggestions, and superior wisdom of J. O.
Slade in all matters affecting the family business and relation-
ship. J. O. Slade was fully aware of plaintiff's condition, and
of his reliance upon Slade's advice and counsel. Plaintiff is forty-
five years old, feeble, and penniless, and without any assets what-
ever, except his interest in said land. He can earn very little at
day labor, on account of his condition. He is in possession of
lot No. 37 through tenants, and is living on lot No. 28 (the land
in controversy) in "the home house" with the family of one Knott,
and is in charge of a one-horse farm thereon. J. O. Slade under
agreement with plaintiff is getting this year the rents from the
home lot, not holding the same under his deed, but under definite
agreement with plaintiff. Without authority Slade has leased out
the turpentine privileges on the entire place for this year for $90,
for which he should account. Slade stated to the plaintiff that
he would have a home on the entire place with his mother, and
that after she died he was to have the entire tract during his life-
time, to manage as he saw fit, and Slade further assured plaintiff
that he would be fully protected in this, and that *Slade would
have papers so fixed* as that he would in no way be deprived of
this life-estate for himself, so that he could have a home as long
as he lived. It was not explained to him by Slade about the
security deed from plaintiff's mother to his sister, Mrs. Leila
Slade, nor did he understand anything about it, being on the con-
trary assured that the papers that were being prepared were for
the protection of his interest. He prays that Slade be enjoined
from interfering in any way with his possession of the lands, and
from renting any of them except in recognition of the rights of
plaintiff; that the security deed from Mrs. Raines to Leila Slade,
and the deed from Slade, administrator, to J. O. Slade individu-
ally, be canceled. This prayer was amended as follows: "that is,
that the same be canceled of record as null and void as relates to
the life-estate of this plaintiff; and that this court decree that
said deeds above set out, and all interest of the defendant, J. O.

Slade, thereunder be subjected to all the rights and interest of this plaintiff as the life-tenant of the entire estate in question, and that the same do not have any binding force with reference to said lands until after the death of this plaintiff;" that pending this proceeding plaintiff's possession of the premises, and living on the same as a home, be protected in such way, by proper orders of the court, as will preserve the rights of both plaintiff and defendant, and at the same time prevent plaintiff from being turned out of his home penniless; that plaintiff be fully protected by decree of the court providing that none of the rights and interest of J. O. Slade, or of any of the other defendants, operate against the lands in question until after the death of the plaintiff; and that plaintiff be fully protected in all his rights and interest in said place, as life-tenant thereof, under the deed from his mother to him; that an accounting be had between plaintiff and defendants as to the rents, issues, and profits of the land, and of damages thereto occasioned by the defendant; and for general relief.

1. The first question raised by the bill of exceptions is upon the overruling of the demurrer to the petition. It is contended that the petition does not set out a cause for equitable relief. The petition was amended twice after the case went back to the court below, apparently to meet certain special demurrers, and to more fully set forth the facts of the case. I am of the opinion that if there ever was a case where equity ought to stretch forth its powerful hand to prevent an irreparable injury being done, it is the present case, under the facts set forth in the petition as amended. Here is a case where a mother, son, and daughter inherited a tract of land from the deceased husband and father, who died intestate; and these three held the land as tenants in common. In order to insure the mother a home and support for the remainder of her life, the daughter and son joined in a fee-simple deed conveying the land in question to the mother. Simultaneously therewith the mother, knowing that the son, as the result of a severe spell of illness, was enfeebled in mind and body, executed directly to the son, in consideration of natural love and affection, a life-estate in the land, first reserving a life-estate to herself. The son was to take for life after the expiration of the life-estate to the mother, with a remainder over, after the death of the son, to Mrs. Leila Slade, the daughter, her heirs, executors,

administrators, or assigns, in fee simple. On the same date the mother executed a security deed to the daughter, Mrs. Slade, to the land in question, for a purported consideration of $7,000, which sum of $7,000 was evidenced by a note of the mother. The consideration of this deed was ostensibly for the one-third interest of the daughter in the land, and it provided that if the mother failed or refused to carry out the terms or conditions specified in the deed, then the daughter, her heirs, executors, or assigns had power to sell the land at public outcry, for cash, to the highest bidder before the court-house door, after having complied with the law relative to making advertisements for public sales, etc. The deed also authorized the daughter or her heirs, executors, etc., to become purchasers of the land at such sale, and to execute a deed to themselves under the power given. These three deeds should be construed together, for they were executed simultaneously, at any rate on the same date. The intention of the parties should govern. This is the cardinal rule in the construction of contracts. The daughter died before the mother. The mother and son continued to live on the premises in dispute as long as the mother lived. Upon the latter's death the husband of the daughter was appointed administrator upon his wife's estate, and proceeded, while the son was in life and absent in North Georgia on a visit to relatives, to advertise, without the son's actual knowledge, and to sell and bid in the property and execute to himself a deed. He then demanded possession of the property from the son; whereupon the son brought the present suit to enjoin the defendant, Slade, from interfering with his possession, and to cancel the two last-mentioned deeds.

The question is, what was the intention of the parties in making the deeds? It is inconceivable that the mother and daughter ever intended by the execution of the deeds that the unfortunate son should be deprived of a home on the lands for his life. On the contrary, reading the petition as amended, including the deeds, it seems clear to the writer that all the parties intended two definite things: first, that the mother should have a home for life on the land; second, that at her death the son should have a home on the land for life; and then at the death of the son, the daughter should have the remainder in fee simple. And be it noted that there was no interference with the son's possession as long as

the daughter and the mother lived. It is beyond belief that the mother or sister, or both, should have intended that these conveyances and this note should so operate as to turn this afflicted son out in the world penniless, without one cent of the inheritance from his father's estate. As confirmation of this, neither the mother nor daughter sought to take any steps to oust the son from possession during their lives; for it appears from the petition that the son continued to live on the place with the mother, clearly showing the intention of the mother that the son should have a home there, not only during her life, but that he should remain there under her deed to him after her death, during *his* life. Nor did the daughter during her life say or do anything contrary to this view. She made no effort to disturb his possession. But with one-third interest inherited from his deceased father's estate, he is sold out of "house and home," without his having conveyed, for any valuable consideration, his birthright to his one-third interest in the land. He was told by the defendant, the petition alleges, that he was to have a home for life; and would never be disturbed, and this was manifestly the intention of all the parties to the three deeds at the time of their execution. To make the security deed operative against the plaintiff would be, in my opinion, to do violence to the intention of the parties, and to deprive the plaintiff of his entire interest in the estate, without any consideration whatever moving to him; and such action under the allegations of the petition, would be fraudulent and void as to him. To construe the security deed as valid against the son's life-interest, would make his life-estate, solemnly conveyed to him by his mother, inoperative and of no effect, and, in the language of the petition, would be "an unconscionable construction, in giving effect to all of the deeds made at the time." Why should plaintiff's life-estate be made to stand for his mother's indebtedness to her daughter for her one-third interest in the land? Plaintiff had given his one-third fee-simple interest in the land for only a life-estate in the whole of the land, to be carried out after his mother's death, and then the remainder interest was to go to Mrs. Slade in fee simple. Construing all three deeds together, in the light of the allegations of the petition as amended as to fraud, the only reasonable construction that can be placed upon the security deed is that it could and should operate only

against the life-estate of the mother. The construction contended for by plaintiff in error, under the allegations of the petition, would free the mother absolutely from any liability whatever, and put the whole burden upon the son, a construction never thought of—certainly never expressed—by the makers of the three deeds. Giving to the deeds the construction that only the life-interest of the mother should be bound for her debt, it would not be operative against the interest of Mrs. Slade and the son. Any other construction would make the one-third interest of Mrs. Slade, after the death of the mother, responsible in part for her own debt, which certainly could not have been intended by the parties. Surely neither the daughter, nor the mother, nor the son contemplated the selling of the daughter's interest after the death of the mother. But that is exactly what was done. All three interests were sold.

The petition, as amended since it was previously before the court, alleges such a case of fraud as against the defendant Slade as authorized the jury under the evidence to find for the plaintiff on that issue. And while the allegations as to fraud are somewhat meager, yet they are sufficient, under the evidence, to authorize the jury to find that fraud existed. Fraud is subtle and difficult to prove, but slight circumstances of fraud may be sufficient to carry conviction of its existence to the minds of the jury. Civil Code (1910), § 4626. The jury by their verdict evidently believed that fraud did exist. Any other verdict than that rendered would be contrary to law and the evidence. In the security deed from the mother to the daughter it is provided that at the sale under the power contained in the deed, only Mrs. Slade, "her heirs, executors, administrators, or assigns may become purchaser of the tracts of land herein described at any sale had thereof under the power herein given and conferred, should they be the last,. highest, and best bidders therefor, and in such event they are authorized and empowered to make deed to themselves under the power herein given and conferred." The defendant Slade, personally and individually, bid in the property and took title in himself, thus depriving his children, who are the grandchildren of Mrs. Raines, the grantor, of any interest in the land in controversy. Can it be supposed that this grandmother ever intended such a thing for one moment—that she would put it in

the power of her son-in-law, or any one else, to deprive her own grandchildren of their inheritance in her daughter's estate in land? Yet that is what happened. The very idea is monstrous, and repugnant to every sense of justice and right. This place had been the home of the mother of some of these defendants; but under the view of the majority, they are forever barred from inheriting the land from their mother or grandmother, a proposition surely never contemplated by the parties. It is true their father bought it at the sale, and they are among his heirs at law, but so is his second wife, and there is nothing to prevent his making a deed or will conveying it to entire strangers of these children. It is to be observed from reading the language of the power contained in Mrs. Raines' deed that she uses the language, "should they be the last, highest, and best bidders therefor." She evidently contemplated that her daughter and grandchildren might possibly become bidders for whatever interest she had to convey, and thus used the plural pronoun "they" as being the persons authorized and empowered to purchase, etc., and "they are authorized and empowered to make deed to *themselves*," etc.

Another thing should be considered, and that is that the deed from the mother to the daughter recited a consideration of $7,000, whereas the deed from J. O. Slade, administrator, to J. O. Slade, individually, recites a consideration of only $4,050. All these circumstances were sufficient to, and evidently did, carry conviction to the minds of the jury of fraud; and the trial judge, who heard and tried the case, being satisfied with the verdict, and no errors of law appearing, the writer is of the opinion that the verdict of the jury was authorized, and that the judgment of the lower court should be affirmed.